Honorable Christopher M. Alston
Chapter 11
Hearing Date: April 28, 2017
Hearing Time: 9:30 a.m.
Response Date: April 21, 2017

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In Re:<br><br>Ben H. McIndoe,<br><br>                          Debtor. | Case No. 15-17388<br><br>UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT AND DISALLOWANCE OF ATTORNEY'S FEES FROM SPECIAL COUNSEL RICHARD L. JONES |

The United States Trustee hereby requests that the Court order special counsel Richard L. Jones of Kovac & Jones, PLLC ("Jones") to disgorge approximately $44,000 in fees received for services rendered to Ben H. McIndoe (the "Debtor") during the above-captioned chapter 11 case (the "Case") and disallow all fees that have not yet been paid (the "Motion"). The declaration of Martin L. Smith (the "Smith Decl.") in support of the Motion is being filed concurrently herewith.

**I. OVERVIEW**

As discussed below, over the last 14 months Jones has privately demanded – sometimes multiple times in a single day – that the Debtor pay his special counsel fees for post-petition services to the estate. Those demands have resulted in Jones receiving over $44,000 from the Debtor, without Jones ever having sought or received allowance and approval of his fees by the Court. In addition, Jones never disclosed receipt of any of the payments as required by § 329(a)

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT
OF ATTORNEY'S FEES - 1

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

and Bankruptcy Rule 2016(b) until recently after an express request to do so by the United States Trustee. When Jones filed that disclosure, he misrepresented the source of the funds he received by saying all of the money was from the Debtor's non-filing spouse. In fact, all of the money came from the Debtor's joint bank account, a credit card associated with that account, and the Debtor's sole-member LLC. Under the circumstances, Jones' predatory and egregious actions in clear contravention of the Bankruptcy Code should result in Jones being required to disgorge all sums received for his post-petition services, and any and all further fees should be disallowed.

## II. FACTS

A. <u>Procedural Background</u>.

The Case was filed on December 21, 2015 (the "Petition Date"). The Debtor is married to Chariti McIndoe, but she is not a debtor in the Case. No disclosure statement or plan of reorganization has ever been filed in the Case. On January 12, 2017, the United States Trustee filed a motion to convert or dismiss the Case (the "Dismissal Motion").[1] In response to Dismissal Motion, Jones filed a declaration pointing out that the Debtor has very few unsecured creditors and stating that "[t]his is essentially a home mortgage modification Chapter 11". Declaration of Richard Jones in Opposition to Motion to Dismiss or Convert, ¶ 9, filed as ECF document no. 68. At the hearing held on February 17, 2017, the Court continued the Dismissal Motion to April 14, 2017.

B. <u>All of the Debtor's and Ms. McIndoe's Income is Commingled in a Joint Bank Account</u>.

The Debtor receives monthly rental income of $2,450[2] from residential property located at 5432 35th Ave. SW, Seattle, WA 98126 (the "Rental Property"), including $1,600 from the Debtor's daughter and $850 from his daughter's mother-in-law. *See* Transcript of the Debtor's

---

[1] In the United States Trustee's reply relating to the motion to convert or dismiss the Case filed as ECF document no. 71, the United States Trustee proposed dismissal as in the best interests of creditors and requested that if the Case was dismissed that it not be administratively closed for 60 days in order to allow the investigation that has now resulted in this Motion.

[2] The Debtor's rental income is listed on Schedule I as $2,550, and the United States Trustee does not know why there is a $100 discrepancy unless rent was reduced post-petition.
Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT OF ATTORNEY'S FEES - 2

recent Bankruptcy Rule 2004 examination taken by the United States Trustee on March 22, 2017 (the "Transcript"), p.17, l.25; p.18, ll.1-11. Excerpts from the Transcript are attached to the Smith Decl. as **Exhibit 1**. The Debtor is the sole legal owner of the Rental Property. Transcript, p.18, ll.18-22.

In addition to rental income, the Debtor also receives a net monthly Social Security payment of $386 after certain deductions from the gross entitlement of $468, for total monthly gross income of $2,836. *Id.* at p.17, ll.5-13. The Debtor has a 100% ownership interest in Amigos Financial LLC ("Amigos Financial"), CAAZ-Amigos, LLC, and Amigos Financial Holding, Ltd. Schedule A/B, no. 19. The Debtor did not receive any compensation directly from any of the foregoing entities in 2016. Transcript, p.16, ll.1-2, 17-24. Ms. McIndoe is a real estate broker/agent affiliated with Berkshire Hathaway, and her monthly income varies depending on listings and commissions payable. Her monthly net income is listed on Schedule I as $11,500.

On the Petition Date, the Debtor and Ms. McIndoe had a joint checking and savings account at BECU. Schedule A/B, no. 17; Transcript, p.20, ll.21-23. The BECU checking account, no. xxx1233 (the "BECU Account"), was and is the Debtor's primary account for the day-to-day expenses of both himself and Ms. McIndoe.[3] Transcript, p.21, ll.11-16. Essentially all of the income received by the Debtor and Ms. McIndoe, from all sources, is deposited into the BECU Account or the associated savings account. *Id*. at p.29, ll.1-4. That included an insurance claim payment received on February 23, 2016, for flooding at the Rental Property, in the amount of $10,656. Transcript, p.29, ll.7-24.

C. <u>Jones Acknowledged Need to Seek Court Approval of Fees in Employment Pleadings</u>.

On February 1, 2016, an ex parte application to employ Jones as special counsel was filed by Larry Feinstein, the Debtor's general bankruptcy counsel (the "Employment Application"). ECF document no. 17. The Employment Application states in ¶ 3: "In the one

---

[3] Ms. McIndoe also had a checking and savings account at USAA with a minimal balance, Transcript, p.21, ll.6-10, and an account at Charles Schwab that she put $6,500 into annually for retirement. Transcript, p.28, ll.3-7, 19-21.

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT
OF ATTORNEY'S FEES - 3

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

Case 15-17388-CMA    Doc 98    Filed 03/31/17    Ent. 03/31/17 12:23:45    Pg. 3 of 13

year prior to filing, Mr. Jones has received $3000 [sic]. Post-petition, fees for Mr. Jones will be paid only after notice and hearing and application under Section 330 and Section 331 of the Bankruptcy Code, pursuant to LR 2016-1." The Employment Application was supported by the Declaration of Richard Jones in Support of Application to Hire Special Counsel (the "Jones Employment Declaration"). ECF document no. 17-1. In the Jones Employment Declaration, Jones states that: 1) he has been asked by the Debtor to "review, analyze, and advise" the Debtor on the validity and priority of the mortgage on the Rental Property and to continue with previously-filed state court litigation relating to that mortgage; 2) he has reviewed LBR 2016-1 and is familiar with it; and 3) he received $3,000 prior to the Petition Date, is holding no post-petition retainer, and that "any fees paid to me by the estate shall be after notice and hearing pursuant to LR 2016-1." Jones Employment Declaration, ¶¶ 2-4. Jones does not state or otherwise disclose an intention to look to any non-debtor third party, *i.e.* Ms. McIndoe, for payment of fees for post-petition services to the Debtor and the estate. Both pre-petition and post-petition, only the Debtor has ever been Jones' client. Transcript, p.33; ll.7-22. Ms. McIndoe has never separately engaged Jones or signed any form of employment agreement with him. Transcript, p.34, ll.1-2; p.48, ll.1-7.

On February 2, 2016, the Court entered an Order granting the Employment Application and approving Jones' employment as special counsel. ECF document no. 19. Jones never filed a fee application in the Case until, in response to the United States Trustee's investigation, he recently filed his Motion for Interim Fees on March 28, 2017, as ECF document no. 93 (the "Jones Fee Application"). The Jones Fee Application requests approval and payment of post-petition fees and costs totaling $28,272.46. Interestingly, the Jones Fee Application does not disclose his receipt of over $44,000 in payments discussed below.

D. <u>Jones Demanded and Received Unauthorized Post-Petition Payments From the Debtor</u>.

Between February 15, 2016, and March 6, 2017, at the insistence of Jones, the Debtor made post-petition unauthorized payments to Jones totaling $44,213.99 (the "Post-Petition Payments"). A list of the Post-Petition Payments, prepared by the Debtor and produced for his

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT OF ATTORNEY'S FEES - 4

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

Case 15-17388-CMA    Doc 98    Filed 03/31/17    Ent. 03/31/17 12:23:45    Pg. 4 of 13

recent examination, is attached to the Smith Decl. as **Exhibit 2**. The money paid to Jones came from three sources: $37,713.99 from the Debtor's BECU Account, $2,000 from a debit/Mastercard associated with the BECU Account[4] and authorized by the Debtor,[5] and $4,500 from a checking account in the name of the Debtor's sole-member company Amigos Financial. All of the 18 checks written to Jones on the BECU Account, with one exception, were signed by the Debtor -- as were the 3 checks from Amigos Financial. Copies of all of the applicable checks, and the MasterCard authorization, are attached to the Smith Decl. as **Exhibit 3**.

Jones sends the Debtor monthly billing statements for his post-petition services (the "Billing Statements"). Copies of the Billing Statements for services between December 10, 2015, through January 30, 2017, are attached to the Smith Decl., as **Exhibit 4**.[6] According to the Billing Statements, as of February 2, 2017, the Debtor still owed Jones $28,897.87 after application of the Post-Petition Payments.

The Post-Petition Payments to Jones were in response to his constant telephone calls to the Debtor demanding payment. According to the Debtor, he would sometimes receive three calls a day from Jones wanting money. Transcript, p.42, ll.19-20; p.47, ll.8-13. In an effort to stop the ongoing telephone demands, and set up a payment plan, Ms. McIndoe went to see Jones sometime in February 2017 at a time when the Debtor was ill. Transcript, p.35, ll.2-25; p.36, ll.9-18. At that time, it was agreed that the Debtor would make regular monthly payments of $2,500 to Jones for payment of his post-petition services. In furtherance of that agreement, Jones was paid $2,500 with BECU Account check no. 1965 dated March 6, 2017.

---

[4] Transcript, p.38, ll.1-11.

[5] The Debtor authorized the credit card payment because Jones was demanding payment, and the Debtor did not have the checkbook with him at the time. Transcript, p.38, ll.18-25; p.39, ll.1-9.

[6] According to the Billing Statements, Jones billed the Debtor for services after the Petition Date, and before being employed by the estate on February 2, 2016. Those billings total $2,153.85. The Employment Order did not authorize any nunc pro tunc employment and the post-petition, pre-employment, fees are not allowable.

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT
OF ATTORNEY'S FEES - 5

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

E. <u>Jones' Failed to Disclose Receipt of the Post-Petition Payments in Violation of § 329(a) and Rule 2016(b)</u>.

Jones started receiving the Post-Petition Payments from the Debtor in February 2016, despite never seeking Court approval of his fees or authority to be paid. Jones did not file any § 329(a) and Rule 2016(b) disclosure statements until approximately one year after he received the first payment from the Debtor -- and after he had already received 22 separate payments.

On February 17, 2017, in response to inquiries by the United States Trustee, Jones filed his one and only Disclosure of Compensation Paid to Attorney (the "Rule 2016 Statement"). ECF document no. 72. The Rule 2016 Statement, in its entirety, states:

> PURSUANT TO 11 USC § 329 and Bankruptcy Rule 2016(b), the law firm of KOVAC & JONES, PLLC., hereby discloses receipt of $39,009 in legal fees for services rendered in connection with various legal matter involving Debtor, BEN H. McINDOE, through January 31, 2017. All payments received have come from the income and assets of Debtor's wife, CHARITI McINDOE, and are, therefore, not assets or property of the estate, as provided under 11 USC § 1115(a)(2).

Jones prepared and had Ms. McIndoe sign a declaration dated February 17, 2017 (the "First Ms. McIndoe Declaration"), to support the statements made in the Rule 2016 Statement. ECF document no. 82. Portions of the First Ms. McIndoe Declaration were later clarified and rebutted by a Supplemental Declaration of Chariti McIndoe filed on March 20, 2017 as ECF document no. 92 (the "Supplemental Ms. McIndoe Declaration"). The Supplemental Ms. McIndoe Declaration indicates that some of the payments were from her income and some were from the Debtor's company. In fact, because of the commingling of their income in the BECU Account, it is impossible to say whose income the payments came from in any particular instance. It was all commingled money, in a joint account, and therefore the payments should all be considered from the estate and subject to the Bankruptcy Code's disclosure and Court-approval requirements.

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT OF ATTORNEY'S FEES - 6

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

Case 15-17388-CMA    Doc 98    Filed 03/31/17    Ent. 03/31/17 12:23:45    Pg. 6 of 13

## III. ARGUMENT

A. <u>Jones' Violations of § 329(a) and Bankruptcy Rule 2016(b) Justify Disgorgement and Disallowance of All Fees.</u>

    1. <u>Section 329(a) and Bankruptcy Rule 2016(b).</u>

Section 329(a) requires debtors' attorneys, whether they apply for compensation or not, to—

> [F]ile with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

11 U.S.C. § 329(a). In support of § 329, Rule 2016 requires a debtor's counsel to file the § 329(a) statement within 14 days of the order for relief being filed. The disclosure is a continuing obligation, and a debtor's counsel is required to file supplemental statements to disclose any additional payments within 14 days after receipt of the funds. Fed. R. Bankr. P. 2016(b).

    2. <u>Section 329 and Bankruptcy Rule 2016(b) Are Strictly Construed, and the Court Can Invoke Its Inherent Authority Where, as Here, There is Bad Faith.</u>

In the Ninth Circuit, "[t]he disclosure rules are applied literally, even if the results are sometimes harsh." *Neben & Starrett, Inc. v. Chartwell Financial Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 881 (9th Cir. 1995) (affirming bankruptcy court's denial of entire fee request in a chapter 11 case when counsel stated in Rule 2016 disclosure and fee application that retainer was received from debtor, when in fact it was received from debtor's principal). "Negligent or inadvertent omissions do not vitiate the failure to disclose." *Id.* (citation and internal quotations omitted). "[F]ailure to comply with compensation disclosure rules in bankruptcy is a sanctionable violation, even if proper disclosure would have shown that the attorney had not actually violated any Bankruptcy Code provision or any Bankruptcy Rule." *Park-Helena* at 880.

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT OF ATTORNEY'S FEES - 7

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

Case 15-17388-CMA    Doc 98    Filed 03/31/17    Ent. 03/31/17 12:23:45    Pg. 7 of 13

In addition, a bankruptcy court has the inherent authority to regulate the practice of attorneys who appear before it.[7] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123 (1991); *Haeger v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233, 1243 (9th Cir. 2016); *Price v. Bronitsky (In re Lehtinen*, 564 F.3d 1052, 1058 (9th Cir. 2009); *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 284-85 (9th Cir. 1996).

Under its inherent authority a bankruptcy court may deny attorney fees completely when disclosure is lacking. *Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis)*, 113 F.3d 1040, 1045 (9th Cir. 1995). For example, in the case *In re Lewis*, a chapter 11 case, a debtor's attorney filed a disclosure of compensation statement that inaccurately over-stated the amounts paid pre-petition and the fees still owed by the debtor, then deliberately failed to file an employment application for several months while collecting the post-petition payments for the balance of a $40,000 retainer. *Id.* at 1042. The bankruptcy court ordered the attorney to disgorge all fees received pre- and post-petition and the Ninth Circuit affirmed. *Id.* at 1044, 1046. The Ninth Circuit rejected the attorney's argument that disgorgement of the post-petition fees was improper absent findings under §329(b) that the fees were excessive. *Id.* at 1044. A bankruptcy court need not make findings that a fee was excessive under section 329(b) to order all fees disgorged when fee-related disclosures are lacking. Rather, "[a]n attorney's failure to obey the disclosure and reporting requirements of the Bankruptcy Code and Rules gives the bankruptcy court the discretion to order disgorgement of attorney's fees." *Lewis*, 113 F.3d at 1045.

---

[7] Such inherent authority may be used to address "bad faith" or "willful misconduct," even in the absence of express statutory authority to do so. *Price v. Bronitsky (In re Lehtinen)*, 564 F.3d 1052, 1058 (9th Cir. 2009) (citing *Knupfer v. Lindblade (In re Dyer),* 322 F.3d 1178, 1187 (9th Cir.2003)). Sanctionable acts include those where (1) a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, (2) when a party participates in an abuse of process or other dilatory conduct, or (3) when the court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled." *Chambers,* 501 U.S. at 46–47 (citations omitted); *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine, Inc.)*, 77 F.3d 278, 284 (9th Cir. 1996). *See also Fink v. Gomez*, 239 F.3d 989, 992-93 (9th Cir. 2001). A specific finding of bad faith generally must precede any sanction under the court's inherent powers.

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT OF ATTORNEY'S FEES - 8

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

Case 15-17388-CMA    Doc 98    Filed 03/31/17    Ent. 03/31/17 12:23:45    Pg. 8 of 13

3. <u>Jones' Failure to Timely, Accurately and Completely Disclose the Post-Petition Payments Violates § 329(a) and Rule 2016(b).</u>

Jones is an experienced attorney who is often hired as special counsel in bankruptcy cases to pursue real estate-related state court litigation on behalf of chapter 7 and chapter 11 estates. As such, he is – or certainly should be – familiar with the ongoing disclosure requirements of § 329 and Rule 2016(b).

Despite his expertise and experience, Jones intentionally ignored his duty of disclosure under § 329 and Rule 2016(b) for over a year – during which time he repeatedly sought, received and failed to disclose 22 separate payments from the Debtor totaling over $44,000. Presumably, he would still be concealing receipt of those payments – and demanding more payments – but for the fact that the United States Trustee sent an email on February 8, 2017, to Mr. Feinstein and Jones raising the issue of undisclosed and/or inadequately disclosed post-petition payments and lack of authorization for those payments. On February 15, 2017, the United States Trustee sent another email to Jones about the need to provide the United States Trustee with an accounting of payments received, and his need to file a disclosure about receipt of the Post-Petition Payments. Smith Decl., ¶ 9, ¶ 10. Jones filed the Rule 2016 Statement on February 15, 2017, after receiving the second email.

The Rule 2016 Statement is, in addition to being woefully late, false and misleading. Specifically, the statement that all of the post-petition payments came from Ms. McIndoe's income and assets is demonstrably inaccurate and readily apparent from even a cursory examination of the facts in evidence. First, the majority of the payments, over $33,000 worth, came from the BECU Account – a joint account where the Debtor and Ms. McIndoe deposit and commingle all of their income in order to pay all of their community day-to-day expenses. All but one of the BECU checks given to Jones were, in fact, signed by the Debtor.[8]

---

[8] The checks are printed with only Ms. McIndoe's name on them. At her recent examination, she testified that she did not know why that was since it was always a joint account with the Debtor. Transcript, p.39, ll.13-25; p.40, ll.3-11. The checks were signed by the Debtor in response to Jones' telephone calls to the Debtor demanding payment. *Id.*, at p.42, ll.6-20.

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT OF ATTORNEY'S FEES - 9

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

Second, Jones was paid $4,500 from Amigos Financial (the Debtor's 100% owned LLC) with business checks signed by the Debtor.[9] Finally, Jones was paid $2,000 that the Debtor authorized from his debit/MasterCard. *Even if all of the money for the Post-Petition Payments came from Ms. McIndoe's income, which it did not, § 329(a) still requires timely disclosure of receipt of the payments and disclosure of the source.*

Jones continues to disregard his disclosure obligations under § 329(a) and Rule 2016(b). For example, the Supplemental Ms. McIndoe Declaration, prepared by her counsel Patrick Brick, clarifies that $4,500 was paid to Jones by Amigos Financial. Jones has not amended the Rule 2016 Statement to reflect that fact. Additionally, after Jones filed the Rule 2016 Statement, he received another $2,500 from the BECU Account by a check dated March 6, 2017. No supplemental Rule 2016(a) statement has been filed despite it now being more than 14 days since Jones received the March payment.

B. <u>Jones' Demand For, and Receipt of, Payments for Postpetition Services Without Authorization of the Court Violates § 330 and Rule 2016(a) and Justifies Disgorgement.</u>

As discussed above, Jones recently filed a fee application for approximately $28,000 in post-petition fees. The late-filed Jones Fee Application does not disclose or address payment and application of the Post-Petition Payments that were never allowed or authorized. Instead of fulfilling his duty to seek allowance of the fees underlying the Post-Petition Payments, Jones badgered and demanded payment from the Debtor without ever having his fees scrutinized or approved by the Court. In doing so, Jones has received over $44,000 that he was not authorized or entitled to receive.

---

[9] Because of the payment demands constantly made by Jones, the Debtor asked a long-time friend to pay an old receivable due to Amigos Financial. Jones had the Debtor sign the check over to him, but apparently for some reason Jones' bank would not negotiate it. The Debtor ultimately got the check back, deposited it into the Amigos Financial account, and paid Jones the money with Amigos Financial checks. Transcript, p.43, ll.15-25; p.44, ll.1-22.

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT
OF ATTORNEY'S FEES - 10

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

Case 15-17388-CMA    Doc 98    Filed 03/31/17    Ent. 03/31/17 12:23:45    Pg. 10 of 13

One charge in the Billing Statements is particularly troubling and illustrative of the overly aggressive collection of fees by Jones in the Case. On the invoice dated February 2, 2017, there is a charge of $1,736.56 dated December 19, 2016 with the description: "Paying Sanctions imposed by the Court plus interest." *See* Smith Decl., **Exhibit 4**, p.33. It was <u>Jones</u>, and not the Debtor, who was sanctioned by the King County Superior Court. Transcript, p.52, ll.2-15. The court found that Jones acted in bad faith, and ordered <u>him</u> to pay the defendants' attorneys' fees relating to a particular hearing. Notwithstanding that, the Billing Statement shows Jones passing that sanction on to the Debtor. Copies of the two applicable orders of the King County Superior Court relating to the sanction against Jones are attached to the Smith Decl. as **Exhibit 5**. In fact, Jones contacted the Debtor and told him he needed to bring Jones the money to pay the sanction right away. At that point, the Debtor took him a check for $1,954 to cover the sanction amount plus an additional sum requested by Jones. Transcript, p.51, ll. 21-25; p.52, ll. 1-17.

Under any scenario, Jones' actions in demanding, obtaining, and not disclosing the unauthorized Post-Petition Payments from the Debtor were in bad faith and cannot be allowed to stand. All of the money Jones received for his postpetition fees should be disgorged to the Debtor pursuant to the Court's inherent authority and all other fees disallowed.[10]

---

[10] This is not the first instance of Jones not complying with his § 329 and Rule 2016(b) disclosure requirements, or with him demanding and receiving money post-petition from a debtor. Similar allegations from a debtor have arisen in the chapter 7 case of Penny Anne Stafford, case no. 13-16915. The United States Trustee began investigating the debtor's allegations and Jones sought to reopen the case to get prepetition fees he received from the chapter 7 debtor during the chapter 7 case retroactively allowed. Jones eventually sued the debtor for fees, initiating adversary proceeding no. 17-01006, and the debtor answered and asserted counterclaims. Trial in the Stafford adversary proceeding is currently set for August 24, 2017, in front of Judge Barreca. Notably, despite receiving payments from the debtor during the bankruptcy case for both pre- and post-petition services, as in this Case Jones did not file the required Rule 2016(b) disclosures.

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT OF ATTORNEY'S FEES - 11

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

C. <u>Alternately, if the Court Does Not Order Disgorgement Pursuant to § 329(a) and/or Its Inherent Authority, Then Jones' Fees Should be Scrutinized Pursuant to Section 329(b) and Disgorged to the Extent They Are Excessive.</u>

Section 329(b) provides that if compensation paid to a debtor's attorney exceeds the reasonable value of the services provided, the Court may cancel the agreement between the debtor and the attorney, or order the return of the excessive payment to the estate or the debtor. *See also* Fed. R. Bankr. P. 2017(b). "Counsel bears the burden of justifying his charges under § 329. It is the same burden as he bears when demonstrating an entitlement to fees under §330. [Citations omitted] Failure to meet this burden supports reduction or denial of the compensation sought." *In re Castorena*, 270 B.R. 504, 515 (Bankr. D. Idaho 2001) (court reduced an attorney's chapter 7 flat fee of $250.00 to $125.00). The Court has wide discretion in determining reasonable compensation for purposes of § 329. *Id.* Also, under § 329, the unreasonableness of a fee can derive from either overcharging or from underperforming. *Id.* at 522.

Here, the Jones Fee Application requests allowance and payment of $28,272. That is in addition to the Post-Petition Payments of $44,214. The question then becomes, what value has Jones provided to the Debtor in exchange for fees and costs of over $72,000? The Debtor believes that some of the bills are inflated and include things he wouldn't normally have to pay. Transcript, p.48, ll.20-23. The United States Trustee will leave it to Jones to defend and justify the fees, but notes that Jones lost in state court while earning sanctions along the way, and is now appealing the loss. The Debtor does not appear to have gained anything of value, at least at this point, and the fees seem facially excessive.

/ / /

/ / /

/ / /

/ / /

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT
OF ATTORNEY'S FEES - 12

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

Case 15-17388-CMA    Doc 98    Filed 03/31/17    Ent. 03/31/17 12:23:45    Pg. 12 of 13

## IV. CONCLUSION

The United States Trustee respectfully requests that the Motion be granted, and the Court:

A.  Order Jones to disgorge to the Debtor all fees received in the Case, and disallow the unpaid fees, pursuant to § 329(a) and the Court's inherent authority; or, if such relief is not granted,

B.  Examine the fees paid to, and requested by, Jones for services herein pursuant to § 329(b), and order Jones to turnover to the Debtor any excessive sums paid and disallow fees as deemed appropriate; and/or

C.  Grant such other relief that this Court deems appropriate.

Dated: March 31, 2016.

Respectfully submitted,

Gail Brehm Geiger
Acting U.S. Trustee for Region 18

  /s/ Martin L. Smith
Martin L. Smith, WSBA #24861
Attorney for United States Trustee

UNITED STATES TRUSTEE'S MOTION FOR DISGORGEMENT
OF ATTORNEY'S FEES - 13

Office of the United States Trustee
700 Stewart Street
Suite 5103
Seattle, WA 98101-1271
206-553-2000, 206-553-2566 (fax)

Case 15-17388-CMA    Doc 98    Filed 03/31/17    Ent. 03/31/17 12:23:45    Pg. 13 of 13