The Honorable Christopher M. Alston
Chapter 7
Hearing Date:  May 17, 2019
Hearing Time:  9:30 a.m.
Hearing Location: 700 Stewart St, Seattle, WA
      7th Floor, Courtroom 7206
Response Date:  May 10, 2019

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

In re

BEN HOLMAN McINDOE,

       Debtor.

Case No. 15-17388-CMA

DECLARATION OF GEOFFREY
GROSHONG IN SUPPORT OF ENTRY OF
ORDER APPROVING SALE OF 6928 38TH
AVENUE SW, SEATTLE, WA, FREE AND
CLEAR OF LIENS AND OTHER
INTERESTS, WITH CONSENSUAL
CARVE-OUT, AND GRANTING
RELATED RELIEF

Geoffrey Groshong, attorney for Edmund J. Wood, the chapter 7 trustee for Ben

Holman McIndoe, declares and states as follows:

1.     This case was commenced by the filing of a voluntary Chapter 11 petition

by McIndoe on December 21, 2015 [Dkt. # 1].  On May 1, 2017, the case was converted to a

proceeding under chapter 7 [Dkt. # 110].  On May 2, 2017, Edmund J. Wood was appointed as

the chapter 7 trustee [Dkt. # 112].  On May 19, 2017, this court entered its Ex Parte Order

Authorizing the Employment of Attorney for Trustee [Dkt. # 140].  On July 13, 2017, this court

entered its Ex Parte Order Authorizing Employment of Kai Rainey and RE/Max Eastside

Brokers as Real Estate Agents for the Trustee [Dkt. # 163].

2.     I make this declaration from my personal knowledge and the filings in this

case, and in support of the Motion for Order Approving Sale of Real Property, Free and Clear of

DECLARATION OF GEOFFREY GROSHONG IN SUPPORT OF ENTRY
OF ORDER APPROVING SALE OF 6928 38TH AVENUE SW ... - 1

GROSHONG LAW PLLC
T: 206.508.0585
600 STEWART STREET, SUITE 1300
SEATTLE, WASHINGTON  98101

Case 15-17388-CMA    Doc 302    Filed 05/20/19    Ent. 05/20/19 14:41:48    Pg. 1 of 30

1   Liens and Other Interests, with Consensual Carve-Out, and Related Relief [Dkt. # 285] (the

2   "Motion"), filed April 26, 2019.  I am over the age of 18 years and competent to testify.

3          3.      Following the hearing on the Motion held Friday, April 17, 2019, at

4   approximately 2:45 p.m., I received a copy of the fully executed Addendum/Amendment to

5   Purchase and Sale Agreement signed and dated by the Trustee and by Peter McCune Shannon,

6   the settlor of The Peter McCune Shannon "In Tatters We Trust" Living Trust (the "New Buyer")

7   on April 17, 2019, together with the original Residential Real Estate Purchase and Sale

8   Agreement dated March 25, 2019 (together, the "Offer"), from the Trustee's office.  A true copy

9   of the Offer as received from the Trustee is attached as Exhibit 1.

10         4.      On May 20, 2019, at approximately 11:30 a.m., I received an updated

11  estimated ALTA settlement statement from Wanda Nuxoll's office, showing the New Buyer, the

12  Offer, and the other anticipated closing costs and disbursements, including the consensual

13  carve-out of $10,000 for the benefit of creditors and the $75,000 holdback.  A true copy of the

14  updated estimated ALTA settlement statement is attached as Exhibit 2.

15         I declare on penalty of perjury under the laws of the state of Washington that the

16  foregoing is true and correct.

17         DATED this 20th day of May, 2019, at Seattle, Washington.

18

19                         /s/ Geoffrey Groshong
                           _____
20                         Geoffrey Groshong
                           WSB No. 6124

21

22

23

24

25

26

DECLARATION OF GEOFFREY GROSHONG IN SUPPORT OF ENTRY
OF ORDER APPROVING SALE OF 6928 38TH AVENUE SW … - 2

**GROSHONG LAW PLLC**
T: 206.508.0585
600 STEWART STREET, SUITE 1300
SEATTLE, WASHINGTON  98101

Case 15-17388-CMA    Doc 302    Filed 05/20/19    Ent. 05/20/19 14:41:48    Pg. 2 of 30

# Exhibit 1

DocuSign Envelope ID: E1954E8B-58CB-4230-8C30-6002C692660F

Form 34
Addendum/Amendment to P&S
Rev. 7/10
Page 1 of 1

©Copyright 2010
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## ADDENDUM / AMENDMENT TO PURCHASE AND SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated _3/25/19_ 1

between _The Peter McCune Shannon "In Taters We Trust"_ ("Buyer") 2
_Living Trust_

and _Estate: Edmund J Wood, Trustee for McIndoe_ ("Seller") 3

concerning _6535 6928 39th Ave SW, Seattle, WA 98126_ (the "Property"). 4
Address / City / State / Zip

IT IS AGREED BETWEEN THE SELLER AND BUYER AS FOLLOWS: 5

Purchase price is $759,974.50 6
7
8
Earnest Money is Increased to $140,000 9
10
and will be wired to Law office of 11
12
13
14
Wanda Nuvall on 5/17/19. 15
16
17
18
19
Close date will be on or before 20
21
22
before 6/26/19 23
24
25
26
27
28
29
30

ALL OTHER TERMS AND CONDITIONS of said Agreement remain unchanged. 31

_VS._  5/17/19 _____   _egw_ 5/17/2019 _____
Buyer's Initials  Date   Buyer's Initials  Date   Seller's Initials  Date   Seller's Initials  Date

**OFFER SUMMARY FOR RESIDENTIAL REAL ESTATE PURCHASE AND SALE AGREEMENT**

DATE of OFFER  3/25/2019

MLS # _NA_     SELLING BROKER LAG# _NA_     SELLING OFFICE ID _NA_

~~BASE OFFER PRICE $ 626,596.43    (Enter this amount on Page 1)~~
   +
~~BUYERS PREMIUM/CARVE OUT $ 36,468.58~~         *EGW* 5/17/2019
   =
TOTAL PURCHASE PRICE $ 663,065.00

BUYER CLOSING COST REQUESTED $ ___—___
(MUST BE APPROVED BY LIEN HOLDER)

REQUIRED ADDENDA:
1. Bankruptcy Purchase and Sale--Attached
2. Carve out/As Is/Utilities addendum--Attached
3. Form 17, waived--Attached
4. Legal description--Attached
5. Pre-approval dated in last 30 days
6. Proof of funds dated in last 30 days
7. Copy of EM Check-made out to escrow listed on page 5 paragraph 16 of Purchase and Sale

OPTIONAL ADDENDA –CHECK IF INCLUDED

1. ____ MLS FORM 22J-Lead Paint-As Needed
2. ✓ MLS FORM 22K-Utilities
3. ~~✓ MLS FORM 22SS-Short Sale (Must be included if this is a short sale)~~       *EGW* (DS)
4. ✓ MLS FORM 22T-Title Contingency                                      5/17/2019
5. ✓ Additional addenda (please list) _MLS Form 22AA - Appraisal Addendum_

Buyer(s) exact names and how they will take title:

The Peter McLune Shannon "InTatters WeTrust" Living Trust
Dated July 10, 2007

Buyer Initial: _PS._        Buyer Initial: _____        Seller Initial: *EGW* (DS)
Date: 3/25/19              Date: _____                Date: 5/17/2019

DocuSign Envelope ID: E1954E8B-58CB-4230-8C30-6002C692660F

On or Before
6/26/19

*egw*

5/17/2019

*egw*

5/17/2019

1. **No Representations or Warranties.** The Seller is a bankruptcy trustee and therefore he/she has no personal knowledge regarding the property. There are no representations or warranties regarding the property or its condition. All sales are "as is, where is" and without any representations or warranties of any kind express or implied.

2. **Earnest Money Forfeiture.** In the event the Buyer fails, without legal excuse, to complete the purchase of the property, the earnest money deposit made by the Buyer shall be forfeited to the Seller as the sole and exclusive remedy available to the Seller for such failure. If the earnest money deposit is greater than five percent of the purchase price, only that portion of the earnest money deposit equal to five percent of the purchase price shall be forfeited to the Seller. By their initials below, Buyer and Seller specifically acknowledge that they have read the preceding provision regarding forfeiture of the earnest money and understand and agree to it.

   Buyer Initial: _P.S._   Buyer Initial: _____   Seller Initial: _EJW_
   Date: _3/25/19_   Date: _____   Date: _5/17/2019_

3. **Financing.** This offer [X] is [ ] is not conditioned upon Buyer obtaining a [X] Conventional [ ] FHA [ ] VA [ ] USDA [ ] FHA 203k [ ] Other: _____

   Buyer Does _____/Does Not ___X___ request that seller pay up to _____ in closing and other allowable costs (must be agreed to by lienholder).

4. **Down Payment/Loan Application.** Buyer agrees to pay ___20%___ down, and to make an application, in good faith, within seven days after approval of this Agreement, for a market rate loan to pay the balance of the purchase price. If application is not made within 7 (seven) days of approval, Seller may retain the earnest money and Agreement may terminate.

5. **Proof of Funds.** In the event buyer fails to provide proof of all necessary funds to close; including down payment, closing costs and bankruptcy fee within 48 hours of Sellers acceptance of offer, then this agreement may be terminated by notice from the seller to the buyer and earnest money shall be returned to the buyer.

6. **Financing Deadline/Seller Termination Notice.** If Buyer has not within 30 days after initial signing of this Agreement, given notice that Buyer has obtained financing or waived the financing condition, then this Agreement may terminate upon the expiration of the 30th day after initial signing. If termination occurs, Seller shall remit the earnest money to the Buyer.

Buyer Initial: _P.S._   Buyer Initial: _____   Seller Initial: _EJW_
Date: _3/25/19_   Date: _____   Date: _5/17/2019_

DocuSign Envelope ID: E1954E8B-58CB-4230-8C30-6002C692660F



DS
*EJW*
5/17/2019

DS
*EJW*
5/17/2019

*egw* 5/17/2019

12. **SHORT SALE DISCLOSURE** This sale is ☒/is not ☒ a short sale. If this is a short sale the following shall apply:

    a. This agreement is contingent upon the seller obtaining written consent from the lienholder(s) within_____days (60 days if not filled in, must match days entered on NWMLS form 22SS) of mutual acceptance. Seller shall notify buyer of lienholder approval by providing buyer a copy of the lienholder approval letter. If seller fails to reach agreement with lienholder, this agreement shall terminate and earnest money will be refunded to the buyer.

    b. Buyer acknowledges that lienholder may have additional addendums and clauses that will be integrated into this agreement. Buyer agrees to return all lienholder required documents within 2 calendar days of receipt. If buyer fails to return required documents, this transaction may be cancelled by the seller and earnest money shall be returned to the buyer.

    Buyer Initial: P.S.   Buyer Initial: _____

        Date: 3/25/19    Date: _____

    c. Buyer acknowledges that cost for items such as septic inspection and pumping, well certification, HOA liens, utility liens and appraisal required repairs **may not be agreed to by lienholder**. Buyer agrees to pay for all costs not agreed to by lienholder in order to close. These items are subject to buyer review, buyer may terminate this agreement if items are deemed too costly and earnest money shall be refunded to the buyer.

    Buyer Initial: P.S.   Buyer Initial: _____

        Date: 3/25/19    Date: _____

13. **Hazardous Waste.** The Seller, as a bankruptcy trustee, has no actual personal knowledge of the presence of any hazardous waste on the property, including, but not limited to, petroleum products and asbestos, and has no actual personal knowledge of the violation of any environmental law, regulation or ordinance with respect to the property. Buyer understands and agrees that any knowledge about the condition of the property of other parties including the trustee's real estate agent, debtor, the debtor's employees and agents, or any other persons or entitles shall not be imputed to the trustee or the estate. Buyer hereby assumes all risk and costs related to the presence of hazardous waste and the environmental condition of the property. Buyer hereby waives any and all rights of contribution, indemnity and/or reimbursement with respect to any and all defects, including but not limited to, hazardous waste and environmental condition.

14. **Possession.** Buyer shall be entitled to possession upon closing.

15. **Closing.** "Closing" means the date on which all documents are recorded and the sales proceeds are available to Seller. Seller does not agree to clean the interiors or exteriors of any structures. The sale is "as is, where is".

Buyer Initial: P.S.   Buyer Initial: _____        Seller Initial: *egw*

Date: 3/25/19   Date: _____        Date: 5/17/2019 _____

16. **Escrow Agent.** The transaction shall be escrowed by the following:

☐ **First American Escrow-Tammi Habic,** 2707 Colby Avenue Suite 601, Everett, WA 98201
Phone: (425) 551-2022 Fax: (866) 859-0436 Email: thabic@firstam.com

☑ **Law Office of Wanda Reif Nuxoll, P.S.** PO Box 2406 Issaquah, WA 98027
Phone: (206) 749-2850 Fax: (206) 749-2851 Email: wnuxoll@wrnlaw.com

17. **Condition of Title.** Unless otherwise specified in this Agreement, title to the property shall be marketable at closing. The following shall not cause the title to be unmarketable: rights, reservations, covenants, conditions and restrictions presently of record and general to the area, including but not limited to zoning; easements and encroachments not materially affecting the value of or unduly interfering with Buyer's intended use of the property; and reserved oil and/or mineral rights. Monetary encumbrances not assumed by the Buyer shall be removed from the title by the Seller on or before closing. If for any reason the Seller is unable to transfer marketable title to the Buyer then this Agreement Is null and void, the Buyer's earnest money, if any, shall be returned and the Seller shall be released of all obligations hereunder.

18. **Title Insurance.** Seller shall provide a standard form of title insurance from a title insurance company of Sellers choice. Seller authorizes lender or closing agent, at Seller's expense, to apply for a standard form buyer's policy of title insurance with homeowner's additional protection and inflation protection endorsement if available at no additional cost. If buyer elects to purchase a homeowner or extended title policy, the difference in premium shall be a buyer expense. The preliminary commitment therefor, and the policy to be issued, shall contain no exceptions other than general exclusions and exceptions in said standard form. If title cannot be made so insurable prior to closing, the earnest money shall, unless Buyer elects to waive such defects or encumbrances, be refunded to the Buyer, less any unpaid costs described in paragraph 24 hereof, and this Agreement shall thereupon be terminated.

19. **Title Transfer.** Title shall be transferred by the bankruptcy trustee's quit claim deed.

20. **Buyer's Funds to Close.** Buyer represents Buyer has sufficient funds to close this sale in accordance with this Agreement, and is not relying on any contingent source of funds or gifts unless expressly set forth elsewhere in this Agreement.

21. **Closing Costs and Pro-Rations.** Buyer and Seller shall each pay one-half of the escrow fee. Seller shall pay excise tax. Taxes for the current year shall be pro-rated. Buyer shall pay for oil in the oil tank.

Buyer Initial: _R.S._   Buyer Initial: _____     Seller Initial: _egw_

Date: _3/25/19_   Date: _____      Date: _5/17/2019_

22. **Sale Information.** After approval by the United States Bankruptcy Court, selling agent is authorized to report this Agreement (including price and all terms) to the Northwest Multiple Listing Associations or such other applicable listing association that publishes it to its members, financing institutions, appraisers and anyone else related to the sale. Buyer and Seller authorize all lenders, closing agents, appraisers, title insurance companies and other parties related to the sale, to furnish the listing and/or selling agents, on request, any and all information, and copies of documents concerning the status, progress and final disposition of financing, appraisal, closing, title condition, and any other matter concerning this sale, including buyer's credit report.

23. **Notices.** Unless otherwise specified, any notice required or permitted in, or related to, this Agreement (including any addenda hereto) must be in writing, signed by any one Buyer or Seller (including either husband or wife) and received by selling agent who, for this limited purpose, shall be the agent of both parties. Any time limit in or applicable to a notice shall commence on the date following receipt of the notice by the selling agent, unless that is a Saturday, Sunday or holiday, in which event it will commence on the next following business day. Buyer must keep selling agent advised of their whereabouts to receive prompt notification of receipt of a notice. Selling agent has no responsibility to advise of receipt of a notice beyond either phoning the party or causing a copy of the notice to be delivered to the party's address on this Agreement.

24. **Earnest Money Receipt and Disbursement.** Selling agent acknowledges receipt from Buyer of the earnest money as set forth above in the form indicated to be held in Closing Agent's pooled trust account (with interest paid to the Washington Housing Fund or such other relevant fund in accordance with applicable laws). Agent shall not deposit any check until Buyer and Seller both have completed initial signing of this Agreement. Any unpaid loan or sale costs incurred for the Buyer, including credit report, appraisal fee, and escrow cancellation fee, may be paid from the earnest money prior to its disbursement.

25. **Seller Conditions.** This Agreement is subject to approval by the Bankruptcy Court. The trustee does not always have access to a title report or information with respect to the tax consequences of a sale when a purchase offer is made. Accordingly, the purchase agreement is conditioned on: (1) the trustee obtaining an opinion from an accountant that the proposed sale will not result in adverse tax consequences and (2) if the trustee in his or her sole discretion deems it appropriate, the court authorizing an award to the estate of reasonable fees and expenses pursuant to 11 U.S.C. Section 506(c) if there are liens against the property.

Buyer Initial: _____ Buyer Initial: _____  Seller Initial: _EJW_
Date: 3/25/19  Date: _____  Date: 5/17/2019

26. **Subsequent Offers.** All purchase agreements are subject to approval and order of the U. S. Bankruptcy Court, and there cannot be mutual acceptance until final approval by the Bankruptcy Court. The Seller will apply to the Bankruptcy Court for approval of the sale as set forth herein as soon as reasonably practicable. Mutual acceptance occurs upon final approval by the Bankruptcy Court. Further, if the trustee receives a better offer on the property prior to or at the Bankruptcy Court hearing, the trustee may accept such offer contingent upon approval of the Bankruptcy Court and request that the court accept the better offer. This clause is an explanation of the law and removal of this clause from this Agreement will not change the law. The trustee agrees, however, to follow the procedure set forth in the next paragraph allowing for Buyer to attempt to match an opportunity competing offer.

27. **Competing Bids.** If this agreement is the first agreement the Seller has signed regarding the subject property, the Seller, subject to court approval, hereby agrees that the Buyer may match the proposed purchase price of any third party offer. In order to bring this paragraph into effect, Buyer must notify the Seller of its intent to match the third party's offer within 48 hours of receipt from the Seller of written notice of the third party's offer. The Seller's notice shall be in writing and state that the Buyer needs to meet or exceed the third party's price and other terms. Price increases must be in increments of not less than one percent of the offer price or $5,000 dollars, whichever is greater. If an offer is received within 24 hours of the court hearing date, the court may have the proposed purchasers submit in writing their last, highest, and best offers at or following the hearing to approve the sale.

28. **Agreement to Purchase and Time Limit for Acceptance.** Buyer offers to purchase the property on the above terms and conditions. The initial signing is not effective until a signed copy hereof is actually received by the office of the selling agent. If this offer is not so signed, it shall lapse and selling agent shall refund the earnest money to Buyer.

29. **Counteroffers.** If a party makes a counteroffer the other party shall have until 9:00 p.m. on the second day following receipt of the counteroffer to sign it. Signing is only effective by delivering the signed counteroffer to the office of the selling broker.

30. **Commission.** A real estate commission will be paid at closing in accordance with the listing agreement and pursuant to an order of the Bankruptcy Court.

31. **Resale Certificate.** If the subject real property is a condominium, Buyer shall purchase a Resale Certificate within ten (10) days after written lien holder approval. Buyer shall be conclusively deemed to have approved said Resale Certificate unless within fifteen (15) days following lienholder approval, Buyer gives notice of disapproval of the Resale Certificate. If Buyer disapproves said Resale Certificate this Agreement shall terminate and the earnest money shall be refunded to Buyer.

Buyer Initial: _VS._     Buyer Initial: _____

Date: _3/25/19_     Date: _____

Seller Initial: _egw_

Date: _5/17/2019_

32. **Disclosure Statement**. The Seller is a bankruptcy trustee and therefore exempt from providing a real property transfer disclosure statement and therefore no such statement will be provided.

33. **Earnest Money Deposit.** Selling Broker will deposit any check to be held by Selling Broker as earnest money within three (3) days after receipt or initial signing, whichever occurs later. If the earnest money is held by Selling Broker and Is over $10,000.00 it shall be deposited into an interest bearing trust account in Selling Broker's name provided that Buyer completes an IRS Form W-9. Interest, if any, after deduction of bank charges and fees will be paid to Buyer. Buyer agrees to reimburse Selling Broker for bank charges and fees in excess of the interest earned, if any. If the Buyer does not complete an IRS Form W-9 before Selling Broker must deposit the earnest money or if the earnest money is $10,000.00 or less, the earnest money shall be deposited into the Housing Trust Fund Account. Selling Broker may transfer the earnest money to Closing Agent. Buyer agrees to pay financing and purchase costs incurred by buyer. If all or part of the earnest money is to be refunded to Buyer and any such costs remain unpaid, the Selling Broker or Closing Agent may deduct and pay them therefrom.

34. **Lead Paint.** Many used homes, especially those constructed before 1978, contain lead paint. Lead paint is poisonous, especially for children. The Seller has no knowledge with respect to the presence or absence of lead paint in the subject property. The Buyer shall undertake such investigation as he or she deems prudent in the circumstances. The Buyer shall conduct an initial inspection for the presence of lead paint within the fifteen day time frame set forth in paragraph 8 herein. However, provided that the Buyer obtains specimens for analysis within the original inspection period and delivers them to a laboratory, upon written notice to the Seller within the original fifteen (15) day period, the Buyer may have an additional ten (10) days to obtain the results of a laboratory analysis for the presence of lead. If the Buyer does not obtain such laboratory samples, deliver them to a laboratory and provide the Seller with notice within fifteen (15) days of initial signing, this contingency will be deemed to be waived on the close of business fifteen days from Initial signing. Unless the Buyer notifies the Seller within such additional ten (10) day period that the property is not acceptable due to the presence of an unsafe levels of lead paint, then this contingency will be deemed waived.

35. **Agency Disclosure and Receipt of Agency Pamphlet.** Seller acknowledges receipt of the pamphlet entitled The Law of Real Estate Agency. The Northwest Multiple Listing Association requires all Real Estate licensees (agents) to disclose to the Buyer and Seller in a real estate transaction whether the licensee represents the Seller, the Buyer, both the Seller and the Buyer, or neither. The listing licensee represents the Seller. The selling licensee represents:

[   ] Seller    [   ] Buyer    [ X ] Neither    [   ] Both.

Selling Licensee Initial: _NA_    Buyer Initial: _P.S._    Buyer Initial: _____

Date: _____    Date: _3/25/19_    Date: _____

Buyer Initial: _P.S._    Buyer Initial: _____    Seller Initial: _egw_ (DS)

Date: _3/25/19_    Date: _____    Date: _5/17/2019_

36. **Addenda**. The following addenda are attached hereto and made a part of this Agreement:

   [ ] NONE    [X] _Forms 22T, 22AA_

37. **Facsimile and E-mail Transmission**. Facsimile transmission of any signed original document, and retransmission of any signed facsimile transmission, shall be the same as delivery of an original. At the request of either party, or the Closing Agent, the parties will confirm facsimile transmitted signatures by signing an original document. E-mail transmission of any signed original document, and retransmission of any such e-mail, shall be the same as delivery of an original, provided that the e-mail is sent to both Selling Broker and Selling Firm or both Listing Broker and Listing Firm at the e-mail addresses Listed below. At the request of either party, or the Closing Agent, the parties will confirm e-mail transmitted signatures by signing an original document.

Selling Broker Email Address

_Pete. shannon @ ebis.biz_

Listing Broker Email Address

offers@ssapprovals.com

Selling Firm Document Email Address

_pete. shannon @ ebis.biz_

Listing Firm Document Email Address

eastsidebrokers@metroeastside.com

38. **Integration and Electronic Signatures**. This Agreement constitutes the entire understanding between the parties and supersedes all prior or contemporaneous understandings and representations. No modification of this Agreement shall be effective unless agreed in writing and signed by Buyer and Seller. The parties acknowledge that a signature in electronic form has the same legal effect and validity as a handwritten signature.

SELLER SIGNATURE: _Edmund J. Wood_ (DocuSigned by) — E7AB9B16DF234DF...    DATE: 5/17/2019

SELLER: Edmund J. Wood, Ch 7 Bankruptcy Trustee For Ben H. McIndoe 15-17388

BUYER SIGNATURE: _Pete Shan_    DATE: 3/25/19

BUYER PRINT: Peter M. Shannon, Trustee

BUYER SIGNATURE: _____    DATE: _____

BUYER PRINT: _____

Buyer Initial: _P.S._    Buyer Initial: _____
Date: 3/25/19    Date: _____

Seller Initial: _EJW_ DS
Date: 5/17/2019

DocuSign Envelope ID: E1954E8B-58CB-4230-8C30-6002C692660F

Form 34
Addendum/Amendment to P&S
Rev. 7/10
Page 1 of 1

©Copyright 2010
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

### ADDENDUM / AMENDMENT TO PURCHASE AND SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated _3/25/2019_ 1

between _The Peter McCune Shannon "In Tatters We Trust" Living Trust_ ("Buyer") 2

and _Edmund J. Wood, Ch 7 Bankruptcy Trustee For Ben H. McIndoe 15-17388_ ("Seller") 3

concerning _6928 38th Avenue SW          Seattle, WA  98126_ (the "Property"). 4

IT IS AGREED BETWEEN THE SELLER AND BUYER AS FOLLOWS: 5
6
**1. No Representations or Warranties.** The Seller is a bankruptcy trustee and therefore he/she has 7
no personal knowledge regarding the property. There are no representations or warranties 8
regarding the property or its condition. All sales are "as is, where is" and without any 9
representations or warranties of any kind express or implied. 10
11
**2.** Buyer acknowledges that cost for items such as septic inspection and pumping, well certification, HOA 12
liens, utility liens and appraisal required repairs may not be agreed to by lienholder. Buyer agrees to pay for 13
all costs not agreed to by lienholder in order to close. These items are subject to buyer review, buyer may 14
terminate this agreement if items are deemed too costly and earnest money shall be refunded to the buyer. 15
16
**3.** Buyer agrees to pay up to 5.5% of purchase price or as outlined below (check one below) whichever is 17
greater, at closing as a buyers premium to the estate. This fee must be paid in full at closing and cannot be 18
included in the loan amount. Fee will appear on HUD as Buyer Bankruptcy Fee. Buyer represents that these 19
funds are available and agrees to provide proof of funds with offer when submitted. 20

Paragraph 3 no longer 21
applies as sale is no longer 22
a short sale. 23

Base offer Price $0-215,000 ☐ $15,000 BK Fee 24

Base offer Price $215,001-$364,000 ☒ $20,000 BK Fee    *EJW* 23

Base offer Price $364,001 and up ☑ 5.5% BK Fee  P.S.   5/17/2019 25

4. Buyer is unrepresented by a selling firm/broker. Listing office to 26
credit 2.5% of sale price to buyer at closing, subject to court 27/28
and lienholder approval.  P.S.   *EJW* 5/17/2019 29/30

ALL OTHER TERMS AND CONDITIONS of said Agreement remain unchanged. 31

Initials: BUYER: _P.S._ Date: _3/25/19_ SELLER _EJW_ Date: _5/17/2019_
BUYER: ___ Date: ___ SELLER: ___ Date: ___

DocuSign Envelope ID: E1954E8B-58CB-4230-8C30-6002C692660F

Form 22SS
Short Sale Addendum
Rev. 5/14
Page 1 of 1

**SHORT SALE ADDENDUM TO**
**PURCHASE & SALE AGREEMENT**

©Copyright 2014
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

The following is part of the Purchase and Sale Agreement dated __3/25/2019__ 1

between __The Peter McCune Shannon "In Tatters We Trust" Living Trust__ ("Buyer") 2

and __Edmund J. Wood, Ch 7 Bankruptcy Trustee For Ben H. McIndoe 15-17388__ ("Seller") 3

concerning __6928 38th Avenue SW__   __Seattle, WA  98126__ (the "Property") 4
                  Address                                  City                   State   Zip

1. **SHORT SALE.** A "Short Sale" is a transaction that depends on Seller's creditor(s)' agreement to accept less than 5
   the amount secured by the Property in order to satisfy Seller's obligations at Closing. Buyer and Seller 6
   acknowledge that the purchase price is insufficient to cover Seller's obligations at Closing and that this Agreement 7
   constitutes a Short Sale. 8

2. **SHORT SALE CONTINGENCY.** This Agreement is contingent upon Seller obtaining written consent from Seller's 9
   creditor(s) for the Short Sale and Seller's acceptance of any conditions imposed by Seller's creditor(s) ("Lender 10
   Consent"). Seller shall have _____ days (60 days, if not filled in) after mutual acceptance to obtain Lender 11
   Consent. If Seller timely gives notice of Lender Consent to Buyer ("Notice of Lender Consent"), then this 12
   contingency shall be deemed satisfied. If Seller fails to timely give Notice of Lender Consent to Buyer, then this 13
   Agreement shall terminate and the Earnest Money, if deposited, shall be refunded to Buyer. If Seller becomes 14
   aware that Seller's creditor(s) did not consent to the Agreement or if Seller decides not to accept the conditions 15
   imposed by Seller's creditor(s), Seller shall give notice to Buyer of that fact within 2 days and upon Seller's notice, 16
   this Agreement shall terminate and the Earnest Money, if deposited, shall be refunded to Buyer. Buyer and Seller 17
   acknowledge that Seller has limited control over whether Seller's creditor(s) will consent to the sale and when 18
   such consent is given. 19

3. **OFFERS FROM OTHER BUYERS.** Seller may accept offers from other buyers to purchase the Property and 20
   submit to Seller's creditor(s). The parties are advised that some creditors may require that Seller submit multiple 21
   offers in order to satisfy Seller's obligations to its creditors. Buyer acknowledges that this Agreement does not 22
   have any priority over agreements with or offers from other buyers. Seller has limited control over which 23
   agreement Seller's creditor(s) may approve, and Seller may continue to market the Property. At the time of the 24
   offer, Buyer is advised to inquire about other offers that Seller may have already accepted. 25

   If, after mutual acceptance, Seller submits an offer from another buyer to Seller's creditor(s), Seller must give 26
   notice to Buyer of that fact within 2 days of each such offer ("Notice of Additional Offer"). Buyer may terminate this 27
   Agreement within 3 days of receiving any Notice of Additional Offer, in which case, the Earnest Money, if 28
   deposited, shall be refunded to Buyer. 29

4. **TERMINATION BY BUYER.** Buyer ☐ may; ☐ may not (may, if not filled in) terminate this Agreement at any time 30
   prior to Notice of Lender Consent. Buyer maintains the right to terminate the Agreement under any other condition 31
   or contingency in the Agreement prior to Notice of Lender Consent. If Buyer terminates this Agreement under this 32
   Section, the Earnest Money, if deposited, shall be refunded to Buyer. 33

5. **COMPUTATION OF TIME.** For the purposes of computing time only (except for paragraph 2 above and the 34
   specific items checked below), all timelines in this Agreement shall begin on the date of Notice of Lender 35
   Consent. The timelines for the following items, if checked, shall instead begin on mutual acceptance: 36

   ☐ Deposit of Earnest Money                                    ☐ Inspection Addendum (Form 35) 37
   ☐ Financing Addendum (Form 22A)                               ☐ Title Contingency Addendum (Form 22T) 38
   ☐ Buyer's Sale of Property Contingency Add. (Form 22B)        ☐ Septic Addendum (Form 22S) 39
   ☐ Homeowner's Assoc. Review Period (Form 22D)                 ☐ Neighborhood Review (Form 35 or 35N) 40
   ☐ Other _____                              ☐ Other _____ 41

6. **CLOSING.** The Closing Date shall be _____ days (30 days, if not filled in) after Notice of Lender Consent, 42
   which date shall supersede the Closing Date otherwise provided for in this Agreement. 43

7. **IMPLICATIONS OF A SHORT SALE.** The parties acknowledge that this Addendum does not fully explain all of 44
   the implications of a Short Sale. The parties are advised to seek the advice of third party professionals regarding 45
   this Agreement and the consequences of this Addendum. Seller acknowledges receipt of the Short Sale Seller 46
   Advisory pamphlet prepared by Washington Departments of Licensing and Financial Institutions. 47

8. **NOTICES.** NWMLS Form 90SS (Notice Pursuant to Short Sale Addendum) shall be used for any notice required 48
   by this Addendum. 49

_____    __3/25/19__    _____    _____    _____    _____    _____    _____
Buyer's Initials    Date        Buyer's Initials   Date      Seller's Initials   Date      Seller's Initials   Date
5/17/2019

DocuSign Envelope ID: E1954E8B-58CB-4230-8C30-6002C692660F

Form 22K
Identification of Utilities Addendum
Rev. 5/14
Page 1 of 1

©Copyright 2014
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**IDENTIFICATION OF UTILITIES**
**ADDENDUM TO PURCHASE AND SALE AGREEMENT**

The following is part of the Purchase and Sale Agreement dated ___3/25/19___   1

between __The Peter McLure Shannon "In Taters We Trust" Living Trust__ ("Buyer")   2

and __Edmund J. Wood, Ch 7 Bankruptcy Trustee For Ben H. McIndoe 15-17388__ ("Seller")   3

concerning __6928 38th Avenue SW__                    __Seattle, WA  98126__     (the "Property")   4

Pursuant to RCW 60.80, Buyer and Seller request the Closing Agent to administer the disbursement of closing funds   5
necessary to satisfy unpaid utility charges, if any, affecting the Property. The names and addresses of all utilities   6
providing service to the Property and having lien rights are as follows:   7

| | | |
|---|---|---|
| WATER DISTRICT: | Seattle Public Utilities | 8 |
| | Name | |
| | 700 5th Avenue, Suite 4900 | 9 |
| | Address | |
| | Seattle WA 98124-4018 | 10 |
| | City, State, Zip        Fax. No. | |
| SEWER DISTRICT: | Seattle Public Utilities | 11 |
| | Name | |
| | 700 5th Avenue, Suite 4900 | 12 |
| | Address | |
| | Seattle WA 98124-4018 | 13 |
| | City, State, Zip        Fax. No. | |
| IRRIGATION DISTRICT: | | 14 |
| | Name | |
| | | 15 |
| | Address | |
| | | 16 |
| | City, State, Zip        Fax. No. | |
| GARBAGE: | | 17 |
| | Name | |
| | | 18 |
| | Address | |
| | | 19 |
| | City, State, Zip        Fax No | |
| ELECTRICITY: | Seattle Public Utilities | 20 |
| | Name | |
| | 700 5th Avenue, Suite 3300 | 21 |
| | Address | |
| | Seattle WA 98124-4018 | 22 |
| | City, State, Zip        Fax. No. | |
| GAS: | Seattle Public Utilitres | 23 |
| | Name | |
| | 700 5th Ave., Suite 3300 | 24 |
| | Address | |
| | Seattle WA 98124-4018 | 25 |
| | City, State, Zip        Fax. No. | |
| SPECIAL DISTRICT(S): | | 26 |
| (local improvement districts or | Name | |
| utility local improvement districts) | | 27 |
| | Address | |
| | | 28 |
| | City, State, Zip        Fax. No. | |

If the above information has not been filled in at the time of mutual acceptance of this Agreement, then (1)   29
within _____ days (5 if not filled in) of mutual acceptance of this Agreement, Seller shall provide the Listing   30
Broker or Selling Broker with the names and addresses of all utility providers having lien rights affecting the Property   31
and (2) Buyer and Seller authorize Listing Broker or Selling Broker to insert into this Addendum the names and   32
addresses of the utility providers identified by Seller.   33

Nothing in this Addendum shall be construed to diminish or alter the Seller's obligation to pay all utility charges   34
(including unbilled charges). Buyer understands that the Listing Broker and Selling Broker are not responsible for, or   35
to insure payment of, Seller's utility charges.   36

P.S.    3/25/19          EJW    5/17/2019
Buyer's Initials / Date   Buyer's Initials   Date    Seller's Initials   Date    Seller's Initials   Date

## FIRST AMERICAN TITLE INSURANCE COMPANY
### Exhibit "A"

Vested Owner: EDMUND J. WOOD TRUSTEE, SUBJECT TO PROCEEDINGS PENDING IN THE BANKRUPTCY COURT OF WESTERN DISTRICT OF THE U.S. DISTRICT COURT, WASHINGTON, ENTITLED: IN RE: BEN HOLMAN MCINDOE AND CHARITI D. MCINDOE, AS HER SOLE AND SEPARATE PROPERTY

Real property in the County of King, State of Washington, described as follows:

LOT 7, BLOCK 3, FAUNTLEROY CREST ADDITION TO THE CITY OF SEATTLE, ACCORDING TO THE PLAT HEREOF RECORDED IN VOLUME 19 OF PLATS, PAGE 91, IN KING COUNTY, WASHINGTON.

Tax Parcel Number: 248920014508

Situs Address: 6928 38th Ave SW, Seattle, WA 98126

*EJW*

5/17/2019

RS. 3/25/19

*First American Title*

DocuSign Envelope ID: E1954E8B-58CB-4230-8C30-6002C692660F

| Form 17 | **SELLER DISCLOSURE STATEMENT** | ©Copyright 2015 |
|---|---|---|
| Seller Disclosure Statement | **IMPROVED PROPERTY** | Northwest Multiple Listing Service |
| Rev. 7/15 | | ALL RIGHTS RESERVED |
| Page 1 of 6 | | |

SELLER: Edmund J. Wood, Ch 7 Bankruptcy Trustee For Ben H. McIndoe 15-17388    1
<span style="font-size:small">Seller                                          Seller</span>

To be used in transfers of improved residential real property, including residential dwellings up to four units, new construction,    2
condominiums not subject to a public offering statement, certain timeshares, and manufactured and mobile homes. See RCW    3
Chapter 64.06 for further information.    4

**INSTRUCTIONS TO THE SELLER**    5
Please complete the following form. Do not leave any spaces blank. If the question clearly does not apply to the property check    6
"NA". If the answer is "yes" to any asterisked (*) item(s), please explain on attached sheets. Please refer to the line number(s) of    7
the question(s) when you provide your explanation(s). For your protection you must date and initial each page of this disclosure    8
statement and each attachment. Delivery of the disclosure statement must occur not later than five (5) business days, unless    9
otherwise agreed, after mutual acceptance of a written purchase and sale agreement between Buyer and Seller.    10

**NOTICE TO THE BUYER**    11
THE FOLLOWING DISCLOSURES ARE MADE BY THE SELLER ABOUT THE CONDITION OF THE PROPERTY LOCATED AT    12
6928 38th Avenue SW                                                      , CITY              Seattle                        13
STATE  WA   , ZIP  98126        , COUNTY King                                              ("THE PROPERTY") OR AS    14
LEGALLY DESCRIBED ON THE ATTACHED EXHIBIT A.    15

SELLER MAKES THE FOLLOWING DISCLOSURES OF EXISTING MATERIAL FACTS OR MATERIAL DEFECTS TO BUYER BASED    16
ON SELLER'S ACTUAL KNOWLEDGE OF THE PROPERTY AT THE TIME SELLER COMPLETES THIS DISCLOSURE    17
STATEMENT. UNLESS YOU AND SELLER OTHERWISE AGREE IN WRITING, YOU HAVE THREE (3) BUSINESS DAYS FROM    18
THE DAY SELLER OR SELLER'S AGENT DELIVERS THIS DISCLOSURE STATEMENT TO YOU TO RESCIND THE AGREEMENT    19
BY DELIVERING A SEPARATELY SIGNED WRITTEN STATEMENT OF RESCISSION TO SELLER OR SELLER'S AGENT. IF THE    20
SELLER DOES NOT GIVE YOU A COMPLETED DISCLOSURE STATEMENT, THEN YOU MAY WAIVE THE RIGHT TO RESCIND    21
PRIOR TO OR AFTER THE TIME YOU ENTER INTO A PURCHASE AND SALE AGREEMENT.    22

THE FOLLOWING ARE DISCLOSURES MADE BY SELLER AND ARE NOT THE REPRESENTATIONS OF ANY REAL ESTATE    23
LICENSEE OR OTHER PARTY. THIS INFORMATION IS FOR DISCLOSURE ONLY AND IS NOT INTENDED TO BE A PART OF    24
ANY WRITTEN AGREEMENT BETWEEN BUYER AND SELLER.    25

FOR A MORE COMPREHENSIVE EXAMINATION OF THE SPECIFIC CONDITION OF THIS PROPERTY YOU ARE ADVISED    26
TO OBTAIN AND PAY FOR THE SERVICES OF QUALIFIED EXPERTS TO INSPECT THE PROPERTY, WHICH MAY INCLUDE,    27
WITHOUT LIMITATION, ARCHITECTS, ENGINEERS, LAND SURVEYORS, PLUMBERS, ELECTRICIANS, ROOFERS,    28
BUILDING INSPECTORS, ON-SITE WASTEWATER TREATMENT INSPECTORS, OR STRUCTURAL PEST INSPECTORS.    29
THE PROSPECTIVE BUYER AND SELLER MAY WISH TO OBTAIN PROFESSIONAL ADVICE OR INSPECTIONS OF THE    30
PROPERTY OR TO PROVIDE APPROPRIATE PROVISIONS IN A CONTRACT BETWEEN THEM WITH RESPECT TO ANY    31
ADVICE, INSPECTION, DEFECTS OR WARRANTIES.    32

SELLER ☐ IS/ ☐ IS NOT OCCUPYING THE PROPERTY.    33

**I. SELLER'S DISCLOSURES:**    34
*If you answer "Yes" to a question with an asterisk (*), please explain your answer and attach documents, if available and not    35
otherwise publicly recorded. If necessary, use an attached sheet.    36

| | | YES | NO | DON'T KNOW | N/A | |
|---|---|:---:|:---:|:---:|:---:|---|
| **1. TITLE** | | | | | | 37 38 |
| | A. Do you have legal authority to sell the property? If no, please explain. ............................☐ | | ☐ | ☐ | ☐ | 39 |
| | *B. Is title to the property subject to any of the following? | | | | | 40 |
| | (1) First right of refusal .........................................................................................☐ | | ☐ | ☐ | ☐ | 41 |
| | (2) Option ...............................................................................................................☐ | | ☐ | ☐ | ☐ | 42 |
| | (3) Lease or rental agreement ..............................................................................☐ | | ☐ | ☐ | ☐ | 43 |
| | (4) Life estate? .......................................................................................................☐ | | ☐ | ☐ | ☐ | 44 |
| | *C. Are there any encroachments, boundary agreements, or boundary disputes? ...............................☐ | | ☐ | ☐ | ☐ | 45 |
| | *D. Is there a private road or easement agreement for access to the property? .....................................☐ | | ☐ | ☐ | ☐ | 46 |
| | *E. Are there any rights-of-way, easements, or access limitations that may affect the Buyer's use of | | | | | 47 |
| | the property? ..............................................................................................................................☐ | | ☐ | ☐ | ☐ | 48 |
| | *F. Are there any written agreements for joint maintenance of an easement or right-of-way? ...............☐ | | ☐ | ☐ | ☐ | 49 |
| | *G. Is there any study, survey project, or notice that would adversely affect the property? ..................☐ | | ☐ | ☐ | ☐ | 50 |
| | *H. Are there any pending or existing assessments against the property? ............................................☐ | | ☐ | ☐ | ☐ | 51 |

SELLER'S INITIALS        Date            SELLER'S INITIALS            Date

DocuSign Envelope ID: E1954E8B-58CB-4230-8C30-6002C692660F

**SELLER DISCLOSURE STATEMENT**
**IMPROVED PROPERTY**
*(Continued)*

©Copyright 2015
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

|  | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| *I. Are there any zoning violations, nonconforming uses, or any unusual restrictions on the property that would affect future construction or remodeling? | ☐ | ☐ | ☐ | ☐ | 52 53 54 55 |
| *J. Is there a boundary survey for the property? | ☐ | ☐ | ☐ | ☐ | 56 |
| *K. Are there any covenants, conditions, or restrictions recorded against the property? | ☐ | ☐ | ☐ | ☐ | 57 |

PLEASE NOTE: Covenants, conditions, and restrictions which purport to forbid or restrict the conveyance, encumbrance, occupancy, or lease of real property to individuals based on race, creed, color, sex, national origin, familial status, or disability are void, unenforceable, and illegal. RCW 49.60.224.
<sup>58 59 60 61</sup>

**2. WATER** 62

A. Household Water 63
(1) The source of water for the property is: ☐ Private or publicly owned water system 64
☐ Private well serving only the subject property  *☐ Other water system 65

| | | | | | |
|---|---|---|---|---|---|
| *If shared, are there any written agreements? | ☐ | ☐ | ☐ | ☐ | 66 |
| *(2) Is there an easement (recorded or unrecorded) for access to and/or maintenance of the water source? | ☐ | ☐ | ☐ | ☐ | 67 68 |
| *(3) Are there any problems or repairs needed? | ☐ | ☐ | ☐ | ☐ | 69 |
| (4) During your ownership, has the source provided an adequate year-round supply of potable water? | ☐ | ☐ | ☐ | ☐ | 70 |
| If no, please explain: | | | | | 71 |
| *(5) Are there any water treatment systems for the property? | ☐ | ☐ | ☐ | ☐ | 72 |
| If yes, are they: ☐ Leased ☐ Owned | | | | | 73 |
| *(6) Are there any water rights for the property associated with its domestic water supply, such as a water right permit, certificate, or claim? | ☐ | ☐ | ☐ | ☐ | 74 75 |
| (a) If yes, has the water right permit, certificate, or claim been assigned, transferred, or changed? | ☐ | ☐ | ☐ | ☐ | 76 |
| *(b) If yes, has all or any portion of the water right not been used for five or more successive years? | ☐ | ☐ | ☐ | ☐ | 77 |
| *(7) Are there any defects in the operation of the water system (e.g. pipes, tank, pump, etc.)? | ☐ | ☐ | ☐ | ☐ | 78 |

B. Irrigation Water 79
| | | | | | |
|---|---|---|---|---|---|
| (1) Are there any irrigation water rights for the property, such as a water right permit, certificate, or claim? | ☐ | ☐ | ☐ | ☐ | 80 81 |
| *(a) If yes, has all or any portion of the water right not been used for five or more successive years? | ☐ | ☐ | ☐ | ☐ | 82 83 |
| *(b) If so, is the certificate available? (If yes, please attach a copy.) | ☐ | ☐ | ☐ | ☐ | 84 |
| *(c) If so, has the water right permit, certificate, or claim been assigned, transferred, or changed? | ☐ | ☐ | ☐ | ☐ | 85 |
| *(2) Does the property receive irrigation water from a ditch company, irrigation district, or other entity? | ☐ | ☐ | ☐ | ☐ | 86 |
| If so, please identify the entity that supplies water to the property: | | | | | 87 88 |

C. Outdoor Sprinkler System 89
| | | | | | |
|---|---|---|---|---|---|
| (1) Is there an outdoor sprinkler system for the property? | ☐ | ☐ | ☐ | ☐ | 90 |
| *(2) If yes, are there any defects in the system? | ☐ | ☐ | ☐ | ☐ | 91 |
| *(3) If yes, is the sprinkler system connected to irrigation water? | ☐ | ☐ | ☐ | ☐ | 92 |

**3. SEWER/ON-SITE SEWAGE SYSTEM** 93
A. The property is served by: 94
☐ Public sewer system ☐ On-site sewage system (including pipes, tanks, drainfields, and all other component parts) 95
☐ Other disposal system 96
Please describe:_____ 97

SELLER'S INITIALS _____ Date _____   SELLER'S INITIALS _____ Date _____

DocuSign Envelope ID: E1954E8B-58CB-4230-8C30-6002C692660F

**SELLER DISCLOSURE STATEMENT**
**IMPROVED PROPERTY**
*(Continued)*

©Copyright 2015
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| B. If public sewer system service is available to the property, is the house connected to the sewer main? | ☐ | ☐ | ☐ | ☐ | 98 99 100 |
| If no, please explain: | | | | | 101 |
| *C. Is the property subject to any sewage system fees or charges in addition to those covered in your regularly billed sewer or on-site sewage system maintenance service? | ☐ | ☐ | ☐ | ☐ | 102 103 |
| D. If the property is connected to an on-site sewage system: | | | | | 104 |
| *(1) Was a permit issued for its construction, and was it approved by the local health department or district following its construction? | ☐ | ☑ | ☐ | ☐ | 105 106 |
| (2) When was it last pumped? | | | | | 107 |
| *(3) Are there any defects in the operation of the on-site sewage system? | ☐ | ☐ | ☐ | ☐ | 108 |
| (4) When was it last inspected? | | | | ☐ | 109 |
| By whom: | | | | | 110 |
| (5) For how many bedrooms was the on-site sewage system approved? _____ bedrooms | | | ☐ | ☐ | 111 |
| E. Are all plumbing fixtures, including laundry drain, connected to the sewer/on-site sewage system? | ☐ | ☐ | ☐ | | 112 113 |
| If no, please explain: | | | | | 114 |
| *F. Have there been any changes or repairs to the on-site sewage system? | ☐ | ☐ | ☐ | ☐ | 115 |
| G. Is the on-site sewage system, including the drainfield, located entirely within the boundaries of the property? | ☐ | ☐ | ☐ | | 116 117 |
| If no, please explain: | | | | | 118 |
| *H. Does the on-site sewage system require monitoring and maintenance services more frequently than once a year? | ☐ | ☐ | ☐ | | 119 120 |

NOTICE: IF THIS RESIDENTIAL REAL PROPERTY DISCLOSURE IS BEING COMPLETED FOR NEW CONSTRUCTION WHICH HAS NEVER BEEN OCCUPIED, SELLER IS NOT REQUIRED TO COMPLETE THE QUESTIONS LISTED IN ITEM 4 (STRUCTURAL) OR ITEM 5 (SYSTEMS AND FIXTURES). 121 122 123

**4. STRUCTURAL** 124

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| *A. Has the roof leaked within the last 5 years? | ☐ | ☐ | ☐ | ☐ | 125 |
| *B. Has the basement flooded or leaked? | ☐ | ☐ | ☐ | ☐ | 126 |
| *C. Have there been any conversions, additions or remodeling? | ☐ | ☐ | ☐ | ☐ | 127 |
| *(1) If yes, were all building permits obtained? | ☐ | ☐ | ☐ | ☐ | 128 |
| *(2) If yes, were all final inspections obtained? | ☐ | ☐ | ☐ | ☐ | 129 |
| D. Do you know the age of the house? | ☐ | ☐ | ☐ | ☐ | 130 |
| If yes, year of original construction: | | | | | 131 |
| *E. Has there been any settling, slippage, or sliding of the property or its improvements? | ☐ | ☐ | ☐ | ☐ | 132 |
| *F. Are there any defects with the following: (If yes, please check applicable items and explain) | ☐ | ☐ | ☐ | ☐ | 133 |

| | | | |
|---|---|---|---|
| ☐ Foundations | ☐ Decks | ☐ Exterior Walls | 134 |
| ☐ Chimneys | ☐ Interior Walls | ☐ Fire Alarms | 135 |
| ☐ Doors | ☐ Windows | ☐ Patio | 136 |
| ☐ Ceilings | ☐ Slab Floors | ☐ Driveways | 137 |
| ☐ Pools | ☐ Hot Tub | ☐ Sauna | 138 |
| ☐ Sidewalks | ☐ Outbuildings | ☐ Fireplaces | 139 |
| ☐ Garage Floors | ☐ Walkways | ☐ Siding | 140 |
| ☐ Wood Stoves | ☐ Elevators | ☐ Incline Elevators | 141 |
| ☐ Stairway Chair Lifts | ☐ Wheelchair Lifts | ☐ Other _____ | |

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| *G. Was a structural pest or "whole house" inspection done? | ☐ | ☐ | ☐ | ☐ | 142 |
| If yes, when and by whom was the inspection completed? | | | | | 143 144 |
| H. During your ownership, has the property had any wood destroying organism or pest infestation? | ☐ | ☐ | ☐ | ☐ | 145 |
| I. Is the attic insulated? | ☐ | ☐ | ☐ | ☐ | 146 |
| J. Is the basement insulated? | ☐ | ☐ | ☐ | ☐ | 147 |

SELLER'S INITIALS _____ Date _____    SELLER'S INITIALS _____ Date _____

DocuSign Envelope ID: E1954E8B-58CB-4230-8C30-6002C692660F

**SELLER DISCLOSURE STATEMENT**
**IMPROVED PROPERTY**
*(Continued)*

©Copyright 2015
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|

**5. SYSTEMS AND FIXTURES** — 148

*A. If any of the following systems or fixtures are included with the transfer, are there any defects? — 149

If yes, please explain: _____ — 150, 151

- Electrical system, including wiring, switches, outlets, and service — ☐ ☐ ☐ ☐ 152
- Plumbing system, including pipes, faucets, fixtures, and toilets — ☐ ☐ ☐ ☐ 153
- Hot water tank — ☐ ☐ ☐ ☐ 154
- Garbage disposal — ☐ ☐ ☐ ☐ 155
- Appliances — ☐ ☐ ☐ ☐ 156
- Sump pump — ☐ ☐ ☐ ☐ 157
- Heating and cooling systems — ☐ ☐ ☐ ☐ 158
- Security system: ☐ Owned ☐ Leased — ☐ ☐ ☐ ☐ 159
- Other _____ — ☐ ☐ ☐ ☐ 160

*B. If any of the following fixtures or property is included with the transfer, are they leased? (If yes, please attach copy of lease.) — 161, 162

- Security System: — ☐ ☐ ☐ ☐ 163
- Tanks (type): _____ — ☐ ☐ ☐ ☐ 164
- Satellite dish: _____ — ☐ ☐ ☐ ☐ 165
- Other: _____ — ☐ ☐ ☐ ☐ 166

*C. Are any of the following kinds of wood burning appliances present at the property? — 167
- (1) Woodstove? — ☐ ☐ ☐ ☐ 168
- (2) Fireplace insert? — ☐ ☐ ☐ ☐ 169
- (3) Pellet stove? — ☐ ☐ ☐ ☐ 170
- (4) Fireplace? — ☐ ☐ ☐ ☐ 171

If yes, are all of the (1) woodstoves or (2) fireplace inserts certified by the U.S. Environmental Protection Agency as clean burning appliances to improve air quality and public health? — ☐ ☐ ☐ ☐ 172, 173

D. Is the property located within a city, county, or district or within a department of natural resources fire protection zone that provides fire protection services? — ☐ ☐ ☐ ☐ 174, 175

E. Is the property equipped with carbon monoxide alarms? (Note: Pursuant to RCW 19.27.530, Seller must equip the residence with carbon monoxide alarms as required by the state building code.) — ☐ ☐ ☐ ☐ 176, 177

F. Is the property equipped with smoke alarms? — ☐ ☐ ☐ ☐ 178

**6. HOMEOWNERS' ASSOCIATION/COMMON INTERESTS** — 179

A. Is there a Homeowners' Association? — ☐ ☐ ☐ ☐ 180
Name of Association and contact information for an officer, director, employee, or other authorized agent, if any, who may provide the association's financial statements, minutes, bylaws, fining policy, and other information that is not publicly available: _____ — 181, 182, 183

B. Are there regular periodic assessments? — ☐ ☐ ☐ ☐ 184
$ _____ per ☐ month ☐ year — 185
☐ Other: _____ — 186

*C. Are there any pending special assessments? — ☐ ☐ ☐ ☐ 187

*D. Are there any shared "common areas" or any joint maintenance agreements (facilities such as walls, fences, landscaping, pools, tennis courts, walkways, or other areas co-owned in undivided interest with others)? — ☐ ☐ ☐ ☐ 188, 189, 190

**7. ENVIRONMENTAL** — 191

*A. Have there been any flooding, standing water, or drainage problems on the property that affect the property or access to the property? — ☐ ☐ ☐ ☐ 192, 193

*B. Does any part of the property contain fill dirt, waste, or other fill material? — ☐ ☐ ☐ ☐ 194

*C. Is there any material damage to the property from fire, wind, floods, beach movements, earthquake, expansive soils, or landslides? — ☐ ☐ ☐ ☐ 195, 196

D. Are there any shorelines, wetlands, floodplains, or critical areas on the property? — ☐ ☐ ☐ ☐ 197

*E. Are there any substances, materials, or products in or on the property that may be environmental concerns, such as asbestos, formaldehyde, radon gas, lead-based paint, fuel or chemical storage tanks, or contaminated soil or water? — ☐ ☐ ☐ ☐ 198, 199, 200

*F. Has the property been used for commercial or industrial purposes? — ☐ ☐ ☐ ☐ 201

SELLER'S INITIALS _____ Date _____ SELLER'S INITIALS _____ Date _____

DocuSign Envelope ID: E1954E8B-58CB-4230-8C30-6002C692660F

**SELLER DISCLOSURE STATEMENT
IMPROVED PROPERTY**

*(Continued)*

©Copyright 2015
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| *G. Is there any soil or groundwater contamination? | ☐ | ☐ | ☐ | ☐ | 202 203 204 |
| *H. Are there transmission poles or other electrical utility equipment installed, maintained, or buried on the property that do not provide utility service to the structures on the property? | ☐ | ☐ | ☐ | ☐ | 205 206 |
| *I. Has the property been used as a legal or illegal dumping site? | ☐ | ☐ | ☐ | ☐ | 207 |
| *J. Has the property been used as an illegal drug manufacturing site? | ☐ | ☐ | ☐ | ☐ | 208 |
| *K. Are there any radio towers in the area that cause interference with cellular telephone reception? | ☐ | ☐ | ☐ | ☐ | 209 |

**8. LEAD BASED PAINT** (Applicable if the house was built before 1978). — 210

A. Presence of lead-based paint and/or lead-based paint hazards (check one below): — 211

☐ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain). _____ — 212, 213

☐ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing. — 214

B. Records and reports available to the Seller (check one below): — 215

☐ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below). — 216, 217

_____ — 218

☐ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing. — 219

**9. MANUFACTURED AND MOBILE HOMES** — 220

If the property includes a manufactured or mobile home. — 221

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| *A. Did you make any alterations to the home? | ☐ | ☐ | ☐ | ☐ | 222 |
| If yes, please describe the alterations: _____ | | | | | 223 |
| *B. Did any previous owner make any alterations to the home? | ☐ | ☐ | ☐ | ☐ | 224 |
| *C. If alterations were made, were permits or variances for these alterations obtained? | ☐ | ☐ | ☐ | ☐ | 225 |

**10. FULL DISCLOSURE BY SELLERS** — 226

A. Other conditions or defects: — 227

| | YES | NO | DON'T KNOW | N/A | |
|---|---|---|---|---|---|
| *Are there any other existing material defects affecting the property that a prospective buyer should know about? | ☐ | ☐ | ☐ | ☐ | 228 229 |

B. Verification — 230

The foregoing answers and attached explanations (if any) are complete and correct to the best of Seller's knowledge and Seller has received a copy hereof. Seller agrees to defend, indemnify and hold real estate licensees harmless from and against any and all claims that the above information is inaccurate. Seller authorizes real estate licensees, if any, to deliver a copy of this disclosure statement to other real estate licensees and all prospective buyers of the property. — 231, 232, 233, 234

_____      _____      _____      _____ — 235

Seller            Date            Seller            Date — 236

If the answer is "Yes" to any asterisked (*) items, please explain below (use additional sheets if necessary). Please refer to the line number(s) of the question(s). — 237, 238

239
240
241
242
243
244
245
246
247
248
249
250
251

DocuSign Envelope ID: E1954E8B-58CB-4230-8C30-6002C692660F

**SELLER DISCLOSURE STATEMENT
IMPROVED PROPERTY**

*(Continued)*

©Copyright 2015
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## II. NOTICES TO THE BUYER

### 1. SEX OFFENDER REGISTRATION
INFORMATION REGARDING REGISTERED SEX OFFENDERS MAY BE OBTAINED FROM LOCAL LAW ENFORCEMENT AGENCIES. THIS NOTICE IS INTENDED ONLY TO INFORM YOU OF WHERE TO OBTAIN THIS INFORMATION AND IS NOT AN INDICATION OF THE PRESENCE OF REGISTERED SEX OFFENDERS.

### 2. PROXIMITY TO FARMING
THIS NOTICE IS TO INFORM YOU THAT THE REAL PROPERTY YOU ARE CONSIDERING FOR PURCHASE MAY LIE IN CLOSE PROXIMITY TO A FARM. THE OPERATION OF A FARM INVOLVES USUAL AND CUSTOMARY AGRICULTURAL PRACTICES, WHICH ARE PROTECTED UNDER RCW 7.48.305, THE WASHINGTON RIGHT TO FARM ACT.

## III. BUYER'S ACKNOWLEDGEMENT

### 1. BUYER HEREBY ACKNOWLEDGES THAT:

A. Buyer has a duty to pay diligent attention to any material defects that are known to Buyer or can be known to Buyer by utilizing diligent attention and observation.

B. The disclosures set forth in this statement and in any amendments to this statement are made only by the Seller and not by any real estate licensee or other party.

C. Buyer acknowledges that, pursuant to RCW 64.06.050(2), real estate licensees are not liable for inaccurate information provided by Seller, except to the extent that real estate licensees know of such inaccurate information.

D. This information is for disclosure only and is not intended to be a part of the written agreement between the Buyer and Seller.

E. Buyer (which term includes all persons signing the "Buyer's acceptance" portion of this disclosure statement below) has received a copy of this Disclosure Statement (including attachments, if any) bearing Seller's signature(s).

F. If the house was built prior to 1978, Buyer acknowledges receipt of the pamphlet *Protect Your Family From Lead in Your Home*.

DISCLOSURES CONTAINED IN THIS DISCLOSURE STATEMENT ARE PROVIDED BY SELLER BASED ON SELLER'S ACTUAL KNOWLEDGE OF THE PROPERTY AT THE TIME SELLER COMPLETES THIS DISCLOSURE. UNLESS BUYER AND SELLER OTHERWISE AGREE IN WRITING, BUYER SHALL HAVE THREE (3) BUSINESS DAYS FROM THE DAY SELLER OR SELLER'S AGENT DELIVERS THIS DISCLOSURE STATEMENT TO RESCIND THE AGREEMENT BY DELIVERING A SEPARATELY SIGNED WRITTEN STATEMENT OF RESCISSION TO SELLER OR SELLER'S AGENT. YOU MAY WAIVE THE RIGHT TO RESCIND PRIOR TO OR AFTER THE TIME YOU ENTER INTO A SALE AGREEMENT.

BUYER HEREBY ACKNOWLEDGES RECEIPT OF A COPY OF THIS DISCLOSURE STATEMENT AND ACKNOWLEDGES THAT THE DISCLOSURES MADE HEREIN ARE THOSE OF THE SELLER ONLY, AND NOT OF ANY REAL ESTATE LICENSEE OR OTHER PARTY.

_____  _____  _____  _____
Buyer            Date     Buyer            Date

### 2. BUYER'S WAIVER OF RIGHT TO REVOKE OFFER
Buyer has read and reviewed the Seller's responses to this Seller Disclosure Statement. Buyer approves this statement and waives Buyer's right to revoke Buyer's offer based on this disclosure.

_____  _____  _____  _____
Buyer            Date     Buyer            Date

### 3. BUYER'S WAIVER OF RIGHT TO RECEIVE COMPLETED SELLER DISCLOSURE STATEMENT
Buyer has been advised of Buyer's right to receive a completed Seller Disclosure Statement. Buyer waives that right. However, if the answer to any of the questions in the section entitled "Environmental" would be "yes," Buyer may not waive the receipt of the "Environmental" section of the Seller Disclosure Statement.

*Pete Gramm*     3/25/19     _____  _____
Buyer            Date        Buyer            Date

Seller is a Bankruptcy Trustee and Exempt from providing these Disclosures

*EJW*   2/6/2019
SELLER'S INITIALS   Date   SELLER'S INITIALS   Date

DocuSign Envelope ID: E1954E8B-58CB-4230-8C30-6002C692660F

Form 22T
Title Contingency Addendum
Rev. 7/15
Page 1 of 1

©Copyright 2015
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

**TITLE CONTINGENCY ADDENDUM TO
PURCHASE & SALE AGREEMENT**

The following is part of the Purchase and Sale Agreement dated     3/25/2019                          1

between   The Peter McCune Shannon "InTatters We Trust" Living Trust        ("Buyer")  2
                        Buyer                                    Buyer

and   Edmund J. Wood, Ch 7 Bankruptcy Trustee For Ben H. McIndoe    15-17388    ("Seller")  3
                    Seller                                          Seller

concerning   6928  38th Ave SW        Seattle        WA    98126    (the "Property").  4
                    Address                    City              State   Zip

1.  **Title Contingency**. This Agreement is subject to Buyer's review of a preliminary commitment for title insurance,    5
    together with any easements, covenants, conditions and restrictions of record. Buyer shall have _____    6
    days (5 days if not filled in) from ☒ the date of Buyer's receipt of the preliminary commitment for title insurance;    7
    or ☐ mutual acceptance (from the date of Buyer's receipt, if neither box checked) to give notice of Buyer's    8
    disapproval of exceptions contained in the preliminary commitment.    9

    Seller shall have _____ days (5 days if not filled in) after Buyer's notice of disapproval to give Buyer    10
    notice that Seller will clear all disapproved exceptions. Seller shall have until the Closing Date to clear all    11
    disapproved exceptions.    12

    If Seller does not give timely notice that Seller will clear all disapproved exceptions, Buyer may terminate this    13
    Agreement within 3 days after the deadline for Seller's notice. In the event Buyer elects to terminate the    14
    Agreement, the Earnest Money shall be returned to Buyer.  If Buyer does not timely terminate the Agreement,    15
    Buyer shall be deemed to have waived all objections to title, which Seller did not agree to clear.    16

2.  **Supplemental Title Reports**. If supplemental title reports disclose new exception(s) to the title commitment,    17
    then the above time periods and procedures for notice, correction, and termination for those new exceptions    18
    shall apply to the date of Buyer's receipt of the supplemental title report. The Closing date shall be extended as    19
    necessary to accommodate the foregoing times for notices.    20

3.  **Marketable Title**. This Addendum does not relieve Seller of the obligation to provide marketable title at Closing    21
    as provided for in the Agreement.    22

M.S.      3/25/19                              egw        5/17/2019
Buyer's Initials    Date    Buyer's Initials    Date    Seller's Initials    Date    Seller's Initials    Date

DocuSign Envelope ID: E1954E8B-58CB-4230-8C30-6002C692660F

Form 22AA
Appraisal Addendum
Rev. 7/10
Page 1 of 1

©Copyright 2010
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

## APPRAISAL ADDENDUM TO
## PURCHASE & SALE AGREEMENT

The following is part of the Purchase and Sale Agreement dated ___3/25/2019___    1

between __The Peter McCune Shannon "In Tatters We Trust" Living Trust__ ("Buyer")   2
<span>Buyer</span>     <span>Buyer</span>

and __Edmund J. Wood Ch 7 Bankruptcy Trustee For Ben H. McIndoe__ 15-17388 ("Seller")   3
<span>Seller</span>    <span>Seller</span>

concerning __6928 38th Ave SW____Seattle___WA__98126___ (the "Property").   4
<span>Address</span>     <span>City</span>    <span>State</span>   <span>Zip</span>

## APPRAISAL LESS THAN SALE PRICE.   5

1. If the appraised value of the Property (as determined by a licensed appraiser) is less than the Purchase Price,   6
   Buyer may, within 3 days after receipt of a copy of the appraisal, give notice, which includes a copy of the   7
   appraisal, to Seller of Buyer's election to terminate this Agreement unless Seller, within 10 days after receipt of   8
   such notice, delivers to Buyer either:   9

   (a) A reappraisal or reconsideration of value, at Seller's expense, by the same appraiser or another appraiser,   10
       acceptable to Buyer, in an amount not less than the Purchase Price; or   11

   (b) Seller's written consent to reduce the Purchase Price to an amount not more than the amount specified in the   12
       appraisal or reappraisal by the same appraiser, or an appraisal by another appraiser acceptable to Buyer,   13
       whichever is higher.   14

2. If Seller does not deliver such appraisal, reappraisal, or consent to reduction of the Purchase Price as set forth in   15
   Paragraph 1, this Agreement shall terminate and the Earnest Money shall be refunded to Buyer.   16

3. The Closing date shall be extended as necessary to accommodate the foregoing times for notices.   17

4. ~~This appraisal contingency shall be deemed waived unless Buyer gives the above notice to Seller~~   18
   ~~within _____ days (20 days if not filled in) of mutual acceptance of this Agreement.~~   19

P.S.

*EJW*
5/17/2019

---

P.S.   3/25/19
Buyer's Initials    Date     Buyer's Initials    Date     *EJW*   5/17/2019
                                             Seller's Initials    Date     Seller's Initials    Date

# Exhibit 2

**Law Office of Wanda Reif Nuxoll, PS**
**ALTA Universal ID:  1145564**
**22525 SE 64th Pl #245**
**Issaquah, WA 98027**

| | |
|---|---|
| File No./Escrow No. : | 191905-11 |
| Print Date & Time: | May 20, 2019  11:09 am |
| Officer/Escrow Officer : | |
| Settlement Location : | 22525 SE 64th Pl #245<br>Issaquah, WA 98027 |
| Property Address: | 6928 38th Avenue SW<br>Seattle, WA 98126 |
| Borrower: | The Peter McCune Shannon "In Tatters We Trust" Living Trust Dated July 10, 2007<br>6535 Camino Del Parque<br>Carlsbad, CA 92011 |
| Seller: | Edmund J. Wood, Ch. 7  Bankruptcy Trustee for Ben H. McIndoe #15-17388<br>303 N 67th Street<br>Seattle, WA 98103 |
| Lender: | |
| Settlement Date: | June 26, 2019 |
| Disbursement Date: | June 26, 2019 |

| Seller | | Description | Borrower | |
|---|---|---|---|---|
| **Debit** | **Credit** | | **Debit** | **Credit** |
| | | **Financial** | | |
| | 759,974.50 | Sale Price of Property | 759,974.50 | |
| | | | | |
| | | **Prorations/Adjustments** | | |
| | 85.14 | 1st Half Taxes<br>06/26/19 - 07/01/19 | 85.14 | |
| | | | | |
| | | **Other Loan Charges** | | |
| | | Signing to Bendickson & Associates LLC | 200.00 | |
| | | | | |
| | | **Title Charges and Escrow/Settlement Charges** | | |
| | | CPL Preparation to Law Office of Wanda Reif Nuxoll, PS | 220.00 | |
| 125.00 | | Reconveyance Tracking Fee to Law Office of Wanda Reif Nuxoll, PS | | |
| 1,475.00 | | Settlement Agent to Law Office of Wanda Reif Nuxoll, PS | 1,475.00 | |

Copyright 2015 American Land Title Association
All rights reserved

Case 15-17388-CMA    Doc 302    Filed 05/20/19    Ent. 05/20/19 14:41:48    Pg. 28 of 30

| Seller | | Description | Borrower | |
|---|---|---|---|---|
| Debit | Credit | | Debit | Credit |
| | | **Title Charges and Escrow/Settlement Charges (continued)** | | |
| 2,400.00 | | Owner's Title Insurance to First American Title Insurance Company<br>  Coverage:  0.00<br>  Premium:  2,400.00 | | |
| | | | | |
| | | **Commissions** | | |
| 45,598.47 | | Real Estate Commission - Listing to RE/MAX Eastside Brokers, Inc | | |
| | | | | |
| | | **Government Recording and Transfer Charges** | | |
| | | Recording Fees to First American Title Insurance Company | 240.00 | |
| 13,532.56 | | Excise Tax to King County | | |
| | | | | |
| | | **Payoff(s)** | | |
| 544,035.25 | | Payoff of First Mortgage Loan to Select Portfolio Servicing<br>  Loan Payoff      622,654.88<br>  Additional Interest From:  3,272.75<br>  04/27/19 Through:<br>  06/26/19 @ 50.350000<br>  Per Diem plus 5 Extra<br>  Days<br>  1st half real estate taxes  3,107.62<br>  Less Carve Out     -10,000.00<br>  Less Holdback      -75,000.00<br>      Total Payoff    544,035.25 | | |
| | | | | |
| | | **Miscellaneous** | | |
| 10,000.00 | | Carve Out per Court Order to Edmund J. Wood, Ch. 7  Bankruptcy Trustee | | |
| 75,000.00 | | Holdback per Court Order to Edmund J. Wood, Ch. 7  Bankruptcy Trustee | | |
| 750.00 | | Lienable Utilities to City of Seattle | | |
| 500.00 | | Lienable Utilities to Seattle City Light - Escrow Payment | | |
| | | Credit to Buyer from Listing Office | | 18,999.36 |

| Seller | | | Borrower | |
|---|---|---|---|---|
| Debit | Credit | | Debit | Credit |
| 693,416.28 | 760,059.64 | **Subtotals** | 762,194.64 | 18,999.36 |
| | | **Due from Borrower** | | 743,195.28 |
| 66,643.36 | | **Due to Seller** | | |
| 760,059.64 | 760,059.64 | **Totals** | 762,194.64 | 762,194.64 |

Copyright 2015 American Land Title Association
All rights reserved

**Acknowledgement**

We/I have carefully reviewed the ALTA Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the ALTA Settlement Statement.  We/I authorize Law Office of Wanda Reif Nuxoll, PS to cause the funds to be disbursed in accordance with this statement.

Borrower

The Peter McCune Shannon "In Tatters We Trust" Living Trust Dated July 10, 2007

BY:_____

Seller

Edmund J. Wood, Ch. 7  Bankruptcy Trustee for Ben H. McIndoe #15-17388

BY:_____
    Edmund J. Wood
    Trustee

_____
Escrow Officer

Copyright 2015 American Land Title Association
All rights reserved

File # 191905-11 / 10
Printed on 05/20/19 at 11:09:29AM by sandy.bright.wrn

Case 15-17388-CMA    Doc 302    Filed 05/20/19    Ent. 05/20/19 14:41:48    Pg. 30 of 30